UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROBERT ENGLISH,

     Plaintiff,

v.                                                                    Case No. 3:18cv113-LC-CJK

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

     Defendant.

_____/

<u>REPORT AND RECOMMENDATION</u>

     This case is before the court pursuant to 42 U.S.C. § 1383(c)(3) for review of the final determination of the Commissioner of Social Security ("Commissioner") denying Robert English's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-83. The case was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) and N.D. Fla. Loc. R. 72.2(D). Upon review of the record before the court, I conclude the Administrative Law Judge's ("ALJ") evaluation of plaintiff's subjective symptoms is not supported by substantial evidence. The decision of the Commissioner, therefore, should be remanded for additional proceedings consistent with this Report and Recommendation.

## ISSUES ON REVIEW

Mr. English, who will be referred to as claimant, plaintiff, or by name, argues: (1) the ALJ's assessment of plaintiff's complaints of pain is not supported by substantial evidence; and (2) the ALJ's decision failed to address the limitations caused by plaintiff's hernia.[1]  (Doc. 11).

## PROCEDURAL HISTORY

On April 20, 2015, plaintiff filed an application for SSI, claiming disability beginning January 24, 2015, due to a stroke, sciatica, cataracts, diabetes, hypertension, anxiety, high cholesterol, and back pain.  T. 145.[2]  The Commissioner denied the applications initially and on reconsideration.  T. 157, 175.  After a hearing on February 8, 2017, the ALJ found claimant not disabled under the Act.  T. 54-66. The Appeals Council denied a request for further review and, as a result, the ALJ's decision became the final determination of the Commissioner.  T. 1-3.  The Commissioner's determination is now before the court for review.

---

[1] The court instructed plaintiff that his "memorandum shall, at its outset and before any fact recitation, specifically identify each issue advanced."  (Doc. 8, p. 2).  Nevertheless, plaintiff did not identify the issues until the twelfth and fourteenth pages of his 23-page memorandum.  (Doc. 11, p. 12, 14); *cf.* Fed. R. App. P. 28(a) (providing that an appellate brief shall contain a statement of the issues presented for review before a description of the facts and procedural history).  A very good reason exists for these requirements, in that the reviewing court will read the factual and procedural history in light of the issues actually raised.
98
[2] The administrative record filed by the Commissioner consists of 10 volumes (docs. 7-2 through 7-11) and has 651 consecutively-numbered pages.  References to the record will be by "T.," for transcript, followed by the page number.

## STANDARD OF REVIEW

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). "Even if the evidence preponderates against the [Commissioner], [the court] must affirm if the decision is supported by substantial evidence." *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In

determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (*citing Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)). The reviewing court, however, may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273, 1273 (11th Cir. 1985).

The Social Security Act defines disability as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To qualify as a disability, the physical or mental impairment must be so severe the plaintiff not only is unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 1382c(a)(3)(B).

Pursuant to 20 C.F.R. § 416.920(a)(4), the Commissioner analyzes a disability claim in five steps:

1.    If the claimant is performing substantial gainful activity, he is not disabled.

2.    If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.    If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least 12 months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.    If the claimant's impairments do not prevent him from performing his past relevant work, he is not disabled.[3]

5.    Even if the claimant's impairments prevent him from performing his past relevant work, if other jobs exist in significant numbers in the national economy that accommodate the claimant's residual functional capacity ("RFC") and vocational factors, he is not disabled.

<u>FINDINGS OF THE ALJ</u>

In her written decision, the ALJ made several findings relative to the issues raised in this appeal:

---

[3] "[C]laimant bears the initial burden of establishing a severe impairment that keeps him from performing his past work."  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

• Claimant has the following severe impairments: degenerative disc disease, degenerative joint disease, diabetes mellitus, hypertension, obesity, and history of borderline intellectual functioning. T. 56.

• Claimant has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) except he is limited to occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; no climbing ladders, ropes or scaffolds; and simple, routine, repetitive tasks. T. 60.

• Claimant has not been under a disability, as defined in the Act, from April 20, 2015, the date the application was filed, to May 3, 2017, the date of the ALJ's decision. T. 65.

## FACT BACKGROUND AND MEDICAL HISTORY

At the February 2017 hearing, Mr. English testified about his health, daily activities, and work history. Born on January 15, 1966, he lives with, and receives financial support from, his father. T. 79. Plaintiff has a driver's license but is no longer able to drive. T. 79-80. He completed high school but says he cannot read. T. 80. Claimant previously worked as a lumber grader but stopped in 2009. T. 80.

He believes he is unable to work due to pain in his chest, back, and leg. T. 80, 83. The pain varies from day to day; it interrupts his sleep and makes it difficult to sit down. T. 82-83. He can sit for 10 to 15 minutes at a time and stand for about 10 minutes. T. 83. He can walk about 75 feet before needing to rest and estimates

he can lift only a pound.  T. 83-84.  To alleviate the pain, he takes medication which is helpful "every now and then."  T. 82, 86.  He began using a cane in 2013 and now uses a walker.  T. 82, 87-88.

On a typical day, Mr. English wakes up, sits in a cushioned chair and "doz[es] off."  T. 84, 89.  Every day, he takes a nap around 5:00 p.m.  T. 87.  Pain prevents him from helping his father out around the house, and it hinders his ability to dress and use the bathroom.  T. 84.  Claimant's brothers help him bathe and dress, and his sisters do his grocery shopping.  T. 90-92.  He does not have any hobbies and does not leave his home to attend church or go to the store.  T. 85.

Claimant said pain limited his ability to lift objects.  T. 88.  When asked whether he had a hernia, plaintiff responded, "I don't – they didn't – they say I have one and I didn't know – I don't know."  T. 88.  Mr. English then testified that he experienced stomach pain when lifting objects and "they said it was a hernia."  T. 88.

The evidence also includes records from the emergency room of Jay (Florida) Hospital, where Mr. English sought treatment for various ailments between 2009 and 2014.  On September 19, 2009, he presented with complaints of left lower extremity pain, numbness, and tingling.  T. 420.  The treating provider prescribed acetaminophen, doxycycline, and heat therapy.  T. 420-24.  Plaintiff returned to Jay Hospital on May 17, 2010, again complaining of left lower extremity pain.  T. 362.

After being diagnosed with degenerative joint disease in the left leg, plaintiff received a prescription for Lortab.  T. 363, 366.

Over a year later, on December 2, 2011, claimant returned to Jay Hospital complaining of severe low back pain radiating to his groin and left leg.  T. 376. Plaintiff received prescriptions for tramadol and Neurontin.  T. 380.  Four days later, Mr. English presented to the emergency room with a headache and left arm pain.  T. 382-83.  Plaintiff was prescribed Keflex and sent home to rest.  T. 387.

On January 19, 2012, plaintiff reported back and right hip pain following a fall.  T. 397-99.  He ambulated with a cane and reported difficulty balancing.  T. 397.  In the "Past Medical History" section of the "Triage Sheet," a nurse wrote "chronic back pain, hernia, prostate problems."  T. 397.  X-rays revealed no fractures of the pelvis or right hip; plaintiff was diagnosed with a contusion and prescribed Naprosyn.  T. 399, 401-03.

Claimant returned to the hospital on April 4, 2012, complaining of swelling in both knees.  T. 404.  He had to leave the hospital before receiving treatment, however, because the person driving him could not wait.  T. 406.  On September 11, 2012, plaintiff reported back and left leg pain, as well as a knot on the left leg.  T. 410-11.  Hospital staff injected a pain killer and steroid into Mr. English's left knee and prescribed Lorcet for pain.  T. 417.

Diagnostic imaging from Atmore (Alabama) Hospital also appears in the evidence. X-rays of the lumbar spine taken on May 2, 2013, showed normal "[b]ody heights, disc spaces, alignment, and prevertebral soft tissues." T. 461. X-rays of the left knee from the same day revealed: (1) "mild osteoarthritic changes with mild narrowing of the medial knee compartment as well as medially projecting osteophytes off of the tibia but particularly the femur"; (2) "moderate narrowing of the patellofemoral articulation and . . . a small knee effusion"; (3) "[n]o acute bony abnormality"; and (4) possibly "some arthritic changes in the tibiofibular articulation." T. 462. February 18, 2014, x-rays disclosed "moderate degenerative changes in the mid thoracic spine with bridging type osteophytes." T. 464.

On March 19, 2014, plaintiff returned to Jay Hospital and reported numbness on the right side of his body. T. 367-68. The treating provider noted plaintiff "had a prior [cerebrovascular accident] with a minimal residual neurologic deficit." T. 369. A CT scan of the brain revealed "[n]o acute intracranial event and no change since prior studies." T. 374. Dr. Elise Gordon diagnosed low back pain and prescribed a Toradol injection. T. 371.

On July 14, 2014, plaintiff visited the Cantonment Medical Center to reestablish care. T. 450. On that date, he complained of pain and numbness on the left side of his body, as well as leg swelling. T. 450. Mike Busby, a physician's assistant, noted Mr. English suffered from diabetes mellitus, osteoarthritis,

hypertension, and hyperlipidemia. T. 450. As treatment, Mr. Busby adjusted plaintiff's medications. T. 452-53. In a section of the treatment note titled "other problems," Busby listed "lumbago" and "hernia, unilateral inguinal[.]" T. 451.

On July 24, 2014, plaintiff returned to the Cantonment Medical Center and asked Busby "to fill out a paper saying he's unable to work, so he doesn't have to pay child support[.]" T. 446. Busby "signed his child support waiver request saying he can do light duty," explaining plaintiff "might not be able to do anything physically demanding, but there's no reason he can't do some light filing, answer the phone, etc, as he was actually talking on his phone when I entered the exam room."[4] T. 448. In addition, Busby prescribed tramadol for claimant's knee pain and set a follow-up appointment for October. T. 448.

The follow-up appointment took place on October 2, 2014. T. 439. Busby noted plaintiff ambulated with a cane. T. 441. Busby also continued Mr. English's prescriptions for tramadol, naproxen, cyclobenzaprine, and Cialis. T. 442. Plaintiff presented on December 15, 2014, with complaints of back pain that radiated into the left leg. T. 434. He also reported the "tramadol doesn't help much." T. 434. Busby assessed plaintiff as suffering from sciatica with an unknown cause. T. 434-36. Busby prescribed prednisone and ordered an MRI of the lumbar spine. T. 436.

---

[4] The ALJ assigned "little weight" to Busby's "statement detailing specific abilities of filing and typing . . . , since there is no indication that he has any expertise in vocational placement." T. 63.

The MRI, taken on February 12, 2015, revealed "[s]evere facet arthropathy with mild grade I anterior spondylolisthesis of L4 with respect to L5"; "[a]ssociated disc narrowing and desiccation without focal protrusion or nerve root compression"; and "[m]inor disc bulging at L5-S1." T. 506. On plaintiff's February 23, 2015, visit to the Cantonment Medical Center, Busby indicated the MRI showed lumbar degenerative disc disease and degenerative joint disease. T. 431. Busby referred Mr. English for a neurosurgery consultation; due to plaintiff's lack of insurance, Busby provided a We Care application. T. 431.

Upon his return to the Cantonment Medical Center on March 17, 2015, plaintiff reported he could not afford his medications. T. 425. Mr. Busby "reconciled [claimant's] meds with the Wal-Mart $4 list." T. 427. On May 15, 2015, plaintiff reported "his sciatica has been worse lately" and he had not "been able to get in to neurosurgery from the We Care referral [Busby] gave him." T. 469. Claimant also requested a prescription for Lortab; he stated he tried one of his father's Lortab pills "and it worked better." T. 469. Mr. Busby, however, "[a]dvised . . . on [the] clinic controlled substance policy and that Dr. Salib won't sign-off on chronic schedule II opiates." T. 472. Plaintiff was "[c]ounseled not to take other people's [prescriptions] and to check with Pam on his We Care consult." T. 472. Busby also re-prescribed prednisone and started claimant on Tylenol with Codeine "for break-through pain." T. 472.

## ANALYSIS

Mr. English argues the ALJ's reasons for discounting his complaints of disabling pain are not supported by substantial evidence.  The Eleventh Circuit "has established a three part 'pain standard' th98at applies when a claimant attempts to establish disability through his . . . own testimony of pain or other subjective symptoms."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see also Stewart v. Astrue*, 551 F. Supp. 2d 1308, 1319 (N.D. Fla. 2008) ("Pain and other symptoms reasonably attributed to a medically determinable impairment are relevant evidence for determining residual functional capacity.") (*citing* S.S.R. 96-8p).  "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  *Holt*, 921 F.2d at 1223 (*citing Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).  "[T]he ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms."  *Dyer*, 395 F.3d at 1210 (*quoting Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)).  And of course, the reasons articulated for disregarding the plaintiff's subjective testimony must be based on substantial evidence.  *See Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991).

Here, the ALJ concluded plaintiff's physical impairments "could reasonably be expected to cause the alleged symptoms" but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." T. 61. Substantial evidence, however, does not support the reasons the ALJ gave for discrediting plaintiff's subjective complaints of pain.

First, the ALJ asserted plaintiff received only conservative treatment for complaints of "back problems and pain." T. 61. Claimant argues the ALJ mischaracterized the treatment as conservative and failed to recognize claimant's financial situation limited his treatment options. (Doc. 11, p. 17). Plaintiff correctly notes: (1) he received medication or injections on each visit to the Jay Hospital emergency room; (2) Mr. Busby made a neurosurgical referral but plaintiff could not obtain the recommended care due to a lack of insurance; and (3) he could not obtain stronger medication because the policies of the Cantonment Medical Center prohibit the prescription of certain narcotics. The ALJ, however, did not consider the impact Mr. English's financial condition and lack of insurance had on his ability to seek, or receive, different treatment. Thus, claimant's "conservative treatment" cannot serve as a basis for discounting his subjective allegations. *See Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) ("The ALJ's decision to give limited

weight to Dr. Barber's opinion is not supported by substantial evidence because the ALJ based the credibility of Dr. Barber's opinion primarily on a negative inference from Henry's failure to seek additional medical treatment, without regard for Henry's ability to pay for such treatment.") (*citing* S.S.R. 96-7p).

The ALJ also cited "a significant lapse in treatment" before July 14, 2014, as a reason for discounting the severity of Mr. English's complaints. T. 62. The ALJ noted claimant presented to Cantonment Medical Center on July 14 to reestablish care and Mr. Busby indicated claimant had not been seen since June 2012. T. 62, 450. Busby, however, also wrote plaintiff has "been going to Dr. Sandeep in Atmore, [Alabama] as his [primary care physician]. He says Dr. Sandeep is no longer there, so he wants to come back here." T. 450. Although Dr. Sandeep's treatment notes do not appear in the record, diagnostic imaging from May 2, 2013, and February 18, 2014, confirm plaintiff sought medical care from Dr. Sandeep in Atmore. T. 461-64. Also, plaintiff sought treatment at Jay Hospital for back pain and numbness in September 2012 and March 2014. T. 410-18, 367-74. Thus, the assertion plaintiff had "a significant lapse in treatment" between June 2012 and July 2014 is not supported by substantial evidence.

Next, the ALJ noted plaintiff "acknowledged use of Cialis for erectile dysfunction with reportedly good results." T. 63, 531. The ALJ asserted such evidence "suggests [Mr. English] is somewhat less debilitated than he tried to

portray in his testimony (*e.g.* he is in pain all the time, he can't lift more than 1 pound due to a hernia, he can't do anything outside the household, and he can't do anything around the house, even to help out his presumably elderly father who, according to his primary care records, buys his Cialis for him). " T. 63. Without delving into too much detail, plaintiff's use of Cialis to treat erectile dysfunction does not provide substantial evidence for discrediting plaintiff's subjective allegations.

The ALJ also identified records from a March 19, 2014, emergency room visit as "persuasive." T. 61. The ALJ noted the physical examination revealed "no significant progression of problems" and "no signs of chronic disability." T. 367-74. The persuasiveness of this evidence, however, is limited by the date of the hospital visit. The visit occurred over a year before April 20, 2015, the date plaintiff filed his disability application. T. 65. As the Commissioner notes in her brief, "the relevant inquiry in this case is whether Plaintiff proved []he was disabled from April 24, 2015 until May 3, 2017—the date of the ALJ decision." (Doc. 12, p. 4 n.1). The records from the March 2014 visit to the emergency room do not provide an "adequate" reason for disregarding plaintiff's subjective statements. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) ("If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.").

The ALJ also discounted plaintiff's subjective complaints by asserting his use of a cane was not medically necessary. (Doc. 11, p. 17-19). The ALJ noted:

> [C]laimant complained of left knee pain, but at no time did examinations reveal findings to support compromised ambulation or mobility. Nor is there evidence that an assistive device was medically prescribed or medically necessary, although the record did reference the claimant as walking with a cane purportedly due to issues with balance.

T. 61.

Although a doctor did not prescribe a cane, claimant's use of a cane or walker is consistently documented over several years' worth of records. *See e.g.*, T. 397, 411, 441, 452, 599. And no medical provider told him to stop using the cane or indicated it was not necessary. *See Cooper v. Astrue*, No. 4:08cv479-MP-WCS, 2009 WL 3242029, at *18 (N.D. Fla. Oct. 6, 2009) ("It is true that no physician prescribed a cane, but then again, Plaintiff repeatedly appeared for treatment using a cane and none of his treating physicians told him to stop using it."). The ALJ also asserted "[t]here was no mention . . . of [claimant's] use of an assistive device" when he visited the emergency room in October 2016. T. 63. This assertion is not accurate, however, as the records from the visit indicate Mr. English was "transported to radiology by wheelchair" and "left the Emergency Department in a wheelchair and via private vehicle." T. 622.

The Commissioner also argues the ALJ relied on the opinion of Dr. Ronald Kline, the state agency medical consultant, to discount claimant's allegations and formulate the RFC. T. 63; (Doc. 12, p. 12-14). Dr. Kline reviewed claimant's medical records and, on August 20, 2015, concluded claimant could perform light

work with some additional restrictions. T. 170-72. Importantly, however, Dr. Kline failed to acknowledge the results of the February 2015 MRI of the lumbar spine, which showed "[s]evere facet arthropathy with mild grade I anterior spondylolisthesis of L4 with respect to L5," "[a]ssociated disc narrowing and desiccation without focal protrusion or nerve root compression," and "[m]inor disc bulging at L5-S1."[5] T. 506. Dr. Kline's status as a nonexamining physician, and his failure to discuss the objective evidence confirming the existence of a severe spinal impairment, undermine the persuasiveness of his conclusions. *Cf. Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) ("[R]eports of physicians who do not examine the claimant, taken alone, do not constitute substantial evidence on which to base an administrative decision.").

Next, the Commissioner asserts plaintiff's inconsistent statements regarding his ability to read supports the ALJ's decision. At the February 2017 hearing, plaintiff testified that he could not read. T. 80. Nevertheless, in a Disability Report, claimant said he could read and understand English. T. 273. He also provided written responses to questions related to his disability application, T. 266-69, 294-311, and his sister identified reading the newspaper as one of his hobbies. T. 286.

---

[5] Dr. Kline noted plaintiff requested the results of the MRI in a February 23, 2015, visit to the Cantonment Medical Center. T. 171. Dr. Kline, however, failed to describe the results of the MRI, despite detailing the results of the other diagnostic imaging in the record. T. 170. Nor did Dr. Kline acknowledge Mr. Busby concluded the MRI showed lumbar degenerative disc disease. T. 431.

The ALJ discussed this evidence, however, in the context of assessing the severity of claimant's borderline intellectual functioning.  T. 63.  Although the evidence may provide a reason to discount plaintiff's allegations regarding his intellectual functioning, it has considerably less importance in assessing the severity of his physical limitations.  *See* S.S.R. 16-3p ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation."); *cf. Grier v. Colvin*, 117 F. Supp. 3d 1335, 1352 (N.D. Ala. 2015) ("[T]he ALJ partially and inadequately based his decision to discredit Ms. Grier's entire subjective disabling symptoms because of routine treatment she received to deal with her diabetic condition.  Therefore, to the extent that Ms. Grier's diabetes treatment is appropriately characterized as conservative and successful in controlling her symptoms, such evidence does not serve as substantial evidence supporting the ALJ's entire credibility determination.").   In other words, whatever bearing plaintiff's statements concerning literacy may have on his overall credibility, in the context of Social Security law, they do not provide substantial evidence to support the rejection of his complaints of disabling pain.

Finally, the Commissioner claims plaintiff's activities of daily living supported the ALJ's decision to discount plaintiff's subjective allegations.  Forms completed by plaintiff's sister in April 2015 indicated plaintiff attended church,

family dinners, and sporting events.  T. 286.  The ALJ, however, did not reference these activities when evaluating plaintiff's subjective symptoms.  *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.").  In fact, the ALJ afforded "little weight" to the form completed by plaintiff's sister, asserting it "is a lay opinion made by a person not medically trained to make exacting observations and the observations reflect a specific period of time." T. 63-64.

Based on the foregoing, the reasons the ALJ gave for questioning the veracity of plaintiff's subjective complaints are either unsupported by the evidence or rely on impermissible adverse inferences.  Substantial evidence, therefore, does not support the ALJ's assessment of claimant's subjective symptoms.

In his second claim of error, Mr. English argues the ALJ failed "to address [the] limitations related to his hernia."  (Doc. 11, p. 12).  Plaintiff correctly notes the ALJ did not identify the hernia as a severe impairment or discuss the condition at step two.[6]  Nevertheless, the ALJ's failure to provide an in-depth discussion of the

_____

[6] Because the ALJ found at least one severe impairment, the ALJ's failure to designate the hernia as severe does not necessarily constitute reversible error.  *See Ball v. Comm'r of Soc. Sec. Admin.*, 714 F. App'x 991, 993 (11th Cir. 2018) ("[S]tep two of the test 'acts as a filter' in that the 'finding of any severe impairment . . . is enough to satisfy the requirement of step two' and allow the ALJ to proceed to step three.") (*quoting Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

hernia does not constitute reversible error, because the medical records do not indicate the condition caused work-related functional limitations.

As an initial matter, claimant did not identify a hernia as a physical condition that limited his ability to work in his April 2015 disability application, despite references to a hernia appearing in medical records from 2012 and 2014. T. 145, 274. Furthermore, the ALJ did not overlook the allegations related to the hernia. In a discussion of plaintiff's hearing testimony and credibility, the ALJ specifically noted plaintiff alleged "he can't lift more than 1 pound due to a hernia[.]" T. 63. Thus, the ALJ considered plaintiff's allegations regarding the hernia when formulating the RFC. *See Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe. Instead, at step three, the ALJ is required to demonstrate that it has considered all of the claimant's impairments, whether severe or not, in combination.").

Mr. English claims the "the existence of [a hernia] was first documented in the Emergency Room of Jay Hospital, [and] appeared on the notes of every encounter Mr. English ever had with the treatment staff at the Cantonment Medical Center, his primary care provider[.]" (Doc. 11, p. 13). The medical evidence cited by plaintiff, however, does not support the existence of any functional limitations due to a hernia.

The records from Jay Hospital show plaintiff presented to the emergency room on January 19, 2012, with complaints of back pain and difficulty balancing. T. 397. In the "Past Medical History" section of the "Triage Sheet," a nurse wrote "chronic back pain, hernia, prostate problems." T. 397. The remaining records from the visit do not indicate a physician diagnosed a hernia, that a hernia, if it existed, affected plaintiff, or that treatment was recommended for a hernia. T. 396-403; *see Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("the mere existence of . . . impairments does not reveal the extent to which they limit [the] ability to work or undermine the ALJ's determination in that regard").

Similarly, the treatment notes from Cantonment Medical Center merely identify a hernia as one of plaintiff's "other problems." T. 426, 429, 435, 437, 440, 447, 451, 466, 470. During the visits, Mr. English denied he had abdominal pain. T. 426, 429, 435, 440, 447, 451, 466, 470, 516, 521, 526, 532, 536, 540, 603, 609. And, when claimant visited Jay Hospital with abdominal pain in August 2016, doctors did not mention a hernia or indicate a hernia was causing the abdominal pain. T. 563-72.

Plaintiff has not identified any medical evidence indicating he sought or received treatment for a hernia or that the condition caused limitations not accounted for in the RFC. The lack of treatment for a hernia, not to mention the lack of a definitive diagnosis thereof, supports the ALJ's decision not to assign functional

limitations related to the condition. *See Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012) ("When evaluating a claimant's statements regarding his symptoms and their functional effects, the ALJ may consider whether the level or frequency of treatment is consistent with the level of complaints.") (*citing* S.S.R. 96-7p).

Finally, the lack of objective medical evidence establishing the existence of a hernia or hernia-related functional limitations supports the ALJ's decision to discredit plaintiff's allegations in that regard. *See* 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work[.]"). The evidence does not indicate a physical examination or ultrasound ever confirmed the existence of a hernia. Because the record does not suggest a hernia caused any functional limitations not accounted for in the ALJ-formulated RFC, Mr. English has not demonstrated error on this issue.

Accordingly, it is respectfully RECOMMENDED:

1.   That the Commissioner's decision be set aside and the matter REMANDED for further proceedings consistent with this order.

2.   That the clerk be directed to enter judgment in favor of plaintiff and close the file.

At Pensacola, Florida, this 14th day of December, 2018.

_/s/_ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties.  A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.